**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ALL YEAR HOLDINGS LIMITED,<br><br>                                                  Debtor. | Case No. 1:24-cv-00800-JHR<br><br>Chapter 11<br>Case No. 21-12051-mg |
| AYH WIND DOWN LLC, through Ofer Tzur and Amir Flamer, solely in their joint Capacity as Claims Administrator,<br><br>                                                  Plaintiff,<br><br>                   -against-<br><br>YOEL SILBERSTEIN,<br><br>                                                  Defendant. | Adv. Pro. No. 23-01180-mg |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE AND COMPEL ARBITRATION**

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendant Yoel Silberstein*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.   Defendant's Motion to Withdraw the Reference Is Timely ............................... 2

    II.  Cause Exists to Withdraw the Reference Under 28 U.S.C. § 157(d) ................ 3

    III. The Bankruptcy Court Cannot Adjudicate Plaintiff's Proposed
         Fraudulent Transfer Claims ................................................................................ 5

    IV. Plaintiff's Breach of Promissory Note Claim Is Subject to Arbitration ............. 8

    V.  Defendant Did Not Waive His Right to Arbitrate ............................................. 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Benefits Ins. Agency v. Arkison*,
573 U.S. 25 (2014) ............................................................................................................. 5, 6

*Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*,
931 F.2d 196 (2d Cir. 1991) ..................................................................................................... 8

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) .................................................................................................................. 6

*In re EMS Fin. Servs., LLC*,
491 B.R. 196 (E.D.N.Y. 2013) ................................................................................................ 6

*In re FMI Forwarding Co., Inc.*,
No. 00 B. 41815 (CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) ....................................... 2

*In re Lyondell Chem. Co.*,
467 B.R. 712 (S.D.N.Y. 2012) ................................................................................................ 6

*In re Money Centers of Am., Inc.*,
579 B.R. 710 (S.D.N.Y. 2016) ................................................................................................ 7

*In re Residential Cap., LLC*,
519 B.R. 593 (S.D.N.Y. 2014) ................................................................................................ 3

*In re Residential Cap., LLC*,
527 B.R. 865 (S.D.N.Y. 2014) ................................................................................................ 3

*In re Swift Air, LLC*,
No. 2:12-BK-14362-DPC, 2019 WL 1266100 (Bankr. D. Ariz. Mar. 15, 2019) .................... 6

*Interconnect Tel. Servs., Inc. v. Farren*,
59 B.R. 397 (S.D.N.Y. 1986) .................................................................................................. 3

*Kramer v. Mahia*,
No. 12-MC-794 DLI, 2013 WL 1629254 (E.D.N.Y. Apr. 15, 2013) ...................................... 7

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
626 F.3d 156 (2d Cir. 2010) ..................................................................................................... 9

*Pryor v. Tromba*,
No. 13-CV-676 JFB, 2014 WL 1355623 (E.D.N.Y. Apr. 7, 2014) ......................................... 7

*Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*,
634 B.R. 226 (S.D.N.Y. 2021) ........................................................................................... 6

*Stern v. Marshall*,
564 U.S. 462 (2011) ........................................................................................................... 5

*Stolt-Nielsen SA v. Celanese AG*,
430 F.3d 567 (2d Cir. 2005) ............................................................................................ 10

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
310 F.3d 102 (2d Cir. 2002) .............................................................................................. 9

# PRELIMINARY STATEMENT[1]

Plaintiff's opposition to Defendant's motion to withdraw the reference of this adversary proceeding and compel Plaintiff to arbitrate its state law contract claim relies heavily on the false premise that Defendant timed the filing of his motion to avoid discovery. Defendant never moved in the Bankruptcy Court to stay any proceedings in the adversary proceeding. He timely complied with his discovery obligations by serving initial disclosures, responding to Plaintiff's requests, and sitting for a deposition all within the original deadlines ordered by the Bankruptcy Court. Far from suffering any prejudice, Plaintiff has benefitted from obtaining from Defendant broad discovery that it might not be entitled to receive in arbitration. Accordingly, Plaintiff's timeliness and waiver arguments are without merit. Plaintiff's substantive arguments fare no better.

As to the motion to withdraw the reference, Plaintiff concedes that its state law breach of promissory note claim—the only claim currently at issue in the adversary proceeding—is non-core and cannot be finally adjudicated in the Bankruptcy Court. To the extent that this Court considers Plaintiff's proposed (and unfiled) motion for leave to amend its complaint to assert fraudulent transfer claims against Defendant at all (it should not), the Bankruptcy Court would similarly lack constitutional authority to adjudicate those claims because Defendant did not file a proof of claim in the Debtor's bankruptcy and did not otherwise consent to the Bankruptcy Court's jurisdiction.

As to the motion to compel arbitration, Plaintiff ignores its own concessions concerning Goldman's authority to bind the Debtor, the explicitly broad language in the arbitration clause in the November 2015 Agreement, and Defendant's undisputed testimony that the promissory note and subsequent release were directly tied to the Debtor's obligations to him under the agreement.

---

[1] Capitalized terms have the meanings used in Defendant's opening brief. ECF No. 4.

## ARGUMENT

### I. Defendant's Motion to Withdraw the Reference Is Timely

Defendant neither sought nor gained any form of delay or tactical advantage with the timing of his motion. He did not move to stay discovery in the adversary proceeding after filing his motion on February 2, produced documents in response to Plaintiff's requests, and sat for a deposition on February 20. All of this occurred within the deadlines set forth in the Bankruptcy Court's Case Management and Scheduling Order #1, which Plaintiff (not Defendant) sought at the last minute to extend because it recognized that it cannot prevail on its claim to recover a purported "straightforward promissory note" without additional discovery from non-parties and the assertion of new theories seeking to challenge the valid and enforceable release of the note.

Plaintiff's attempt to rely on *In re FMI Forwarding Co., Inc.*, No. 00 B. 41815 (CB), 2005 WL 147298, at *7 (S.D.N.Y. Jan. 24, 2005), to support its untimeliness argument misses the mark. There, the defendant at issue "filed its withdrawal motion more than two-and-a-half years after the commencement of the Adversary Proceeding" and more than two years after another defendant had moved to withdraw the reference. *Id.* at *6. Moreover, it was only after the plaintiff moved to sever its claims against the defendant so they could be tried first that the defendant moved to withdraw the reference and stay the bankruptcy court's decision on the severance motion, which the district court observed "screams forum-shopping of the claim severance question." *Id.* at *7.

Here, Defendant moved to withdraw the reference only a few months after the commencement of the adversary proceeding, at a time when there were no motions pending in the Bankruptcy Court and while Defendant was complying with his discovery obligations. Defendant also never sought to stay proceedings in the Bankruptcy Court while his motion remains pending.

Most important, Plaintiff cannot identify any prejudice that it has suffered from the timing of Defendant's motion. Plaintiff timely obtained from Defendant all required discovery—both

2

before and after the motion was filed—and "[a]ll of the discovery that has occurred while this action has been pending in the bankruptcy court may be used if the action is removed to the district court" or sent to arbitration, as Defendant contends should happen. *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y. 1986) (rejecting argument that motion to withdraw the reference was untimely despite that it was made a year after the action was filed in the bankruptcy court, the parties had conducted discovery in the bankruptcy court, and the defendant unsuccessfully moved to dismiss the complaint in the bankruptcy court).

## II. Cause Exists to Withdraw the Reference Under 28 U.S.C. § 157(d)

Unable to dispute that its state law breach of promissory note claim is non-core and cannot be adjudicated in the Bankruptcy Court, Plaintiff contends that "issues of judicial economy and uniformity of administration are paramount, and must always guide the District Court's judgment on § 157 motions." ECF No. 7 at 8. Plaintiff's reliance on *In re Residential Cap., LLC*, 519 B.R. 593 (S.D.N.Y. 2014), to support its argument that "the efficient use of judicial resources would be to keep this Adversary Proceeding in the Bankruptcy Court" is misplaced. ECF No. 7 at 12.

In that particular adversary proceeding arising out the ResCap bankruptcy, Judge Castel determined that Judge Glenn should retain the case because the claims at issue involved a global settlement approved in the bankruptcy, would "likely require substantial consideration, interpretation, and application of the terms of the Plan and the Global Settlement incorporated therein," and "the reasonableness of those settlements is an issue that was squarely before Judge Glenn in connection with his approval of the Global Settlement and confirmation of the debtor's Chapter 11 Plan." *Id.* at 603. Here, Plaintiff's prepetition breach of promissory note claim has nothing to do with the terms of the Debtor's confirmed plan, rendering Judge Glenn's institutional knowledge of the Debtor's business and bankruptcy case irrelevant to resolution of this adversary proceeding. The more apt decision from the ResCap bankruptcy is *In re Residential Cap., LLC*,

527 B.R. 865, 871–72 (S.D.N.Y. 2014), where Judge Swain granted the defendant's motion to withdraw the reference, finding that "Judge Glenn['s] . . . unparalleled depth of familiarity with the underlying bankruptcy case, relevant settlements and the Plan" did not support keeping the state law breach of contract claims in the Bankruptcy Court because "the bankruptcy court does not have a unique advantage" as to those non-bankruptcy claims. The same reasoning applies here.

Plaintiff's argument "there is likely to be substantial delay and additional cost if this matter is adjudicated in the District Court" is baseless for the same reason. ECF No. 7 at 12. The Bankruptcy Court's familiarity with the Debtor's bankruptcy has no bearing on the adversary proceeding. This Court does not require an in-depth understanding of the Debtor's bankruptcy proceedings to adjudicate Plaintiff's "straightforward promissory note" claim. To the extent that the Debtor's history or bankruptcy case may become relevant at all, this Court is more than capable of getting up to speed based on the parties' submissions. ECF No. 7 at 1. Furthermore, Defendant was not involved in any of the Debtor's proceedings. He never received notice of the Debtor's bankruptcy, never filed a proof of claim, and never participated in the bankruptcy case in any way.

Plaintiff fails to articulate any actual delay or inefficiency that would result from this Court withdrawing the reference. It cannot credibly do so. The pleadings the parties have filed and the discovery that Plaintiff has taken to date are equally as usable in this Court as in the Bankruptcy Court. And if Plaintiff moves for leave to amend its complaint to assert additional claims, and this Court withdraws the reference before the Bankruptcy Court decides the motion, the parties' motion papers will be equally as applicable in this Court as in the Bankruptcy Court.

Contrary to Plaintiff's repeated assertion, Defendant has done nothing to delay the progression of the adversary proceeding whether in the conduct of discovery[2] or by making this motion. Defendant at all times complied with his discovery obligations and met the deadlines set by the Bankruptcy Court, even after filing this motion. If anything, it is Plaintiff that has sought to delay the adversary proceeding after Defendant filed this motion. It was Plaintiff, not Defendant, that filed an eleventh-hour request to extend the deadline for completing discovery and a months-late request to extend the deadline to move to amend pleadings. Defendant has done nothing to delay the adversary proceeding. Plaintiff has suffered zero prejudice.

### III. The Bankruptcy Court Cannot Adjudicate Plaintiff's Proposed Fraudulent Transfer Claims

Plaintiff's proposed fraudulent transfer claims—which it has not yet moved for leave to allege—should not impact this Court's assessment of whether cause exists to withdraw the reference on the state law breach of promissory note claim that is currently at issue. Plaintiff fails to cite to any authority for the proposition that claims that a plaintiff may potentially seek leave to assert should inform the Court's analysis of whether the existing claims are core or non-core and can be finally adjudicated in the Bankruptcy Court. Even if Plaintiff were granted leave to assert fraudulent transfer claims, the Bankruptcy Court still would lack the constitutional authority to adjudicate those claims, notwithstanding their being statutorily core under 28 U.S.C. § 157(b)(2).

In *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014), the Supreme Court explained that its earlier decision in *Stern v. Marshall*, 564 U.S. 462 (2011), "held that even though bankruptcy courts are statutorily authorized to enter final judgment on a class of bankruptcy-related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating

---

[2] Defendant has not affirmatively sought any discovery from Plaintiff in the adversary proceeding, as doing so would have been inconsistent with his position that the dispute belongs in arbitration.

certain of those claims." *Id.* at 28. Fraudulent transfer claims brought against defendants who have not filed claims against the bankruptcy estate are part of that special class of *Stern* claims that, although labeled as statutorily "core" under 28 U.S.C. § 157(b)(2), cannot be finally adjudicated by a bankruptcy court absent the parties' consent. *See id*. at 37–40; *In re Lyondell Chem. Co.*, 467 B.R. 712, 719–23 (S.D.N.Y. 2012); *In re Swift Air, LLC*, No. 2:12-BK-14362-DPC, 2019 WL 1266100, at *5 (Bankr. D. Ariz. Mar. 15, 2019) (holding that "fraudulent transfer defendants who do not file claims against the bankruptcy estate are not subject to the entry of final orders by a bankruptcy court").

After *Exec. Benefits Ins. Agency*, it is clear that bankruptcy courts faced with *Stern* claims can do no more than what is permitted for "non-core" claims under 28 U.S.C. § 157(c)(1)—i.e., "submit proposed findings of fact and conclusions of law to the District Court to be reviewed *de novo*." *Exec. Benefits Ins. Agency*, 573 U.S. at 38. That being so, denying Defendant's motion to withdraw the reference will only cause delays because "this Court will still be required to review *de novo* any findings made by the bankruptcy court regarding the Adversary Proceeding." *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 205 (E.D.N.Y. 2013). Indeed, "[t]he need to litigate first in the bankruptcy court and then again in the district court could make the proceedings generally more costly for the parties." *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*, 634 B.R. 226, 238 (S.D.N.Y. 2021).

Plaintiff's proposed fraudulent transfer claims also would not affect Defendant's right to a jury trial. The Supreme Court held in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), that the Seventh Amendment entitles defendants who have not filed claims against the bankruptcy estate to a jury trial on fraudulent transfer claims by a trustee (or a liquidation trust like Plaintiff). Because Defendant does not consent to the Bankruptcy Court conducting the jury trial, as required

6

by 28 U.S.C. § 157(e), absent withdrawal of the reference, the Bankruptcy Court would be relegated to overseeing pretrial matters, which this Court or an assigned magistrate judge is equally, if not more capable, of doing. *See In re Money Centers of Am., Inc.*, 579 B.R. 710, 715 (S.D.N.Y. 2016) ("[I]t is a waste of judicial resources for a court of specialized bankruptcy knowledge to administer a case that does not require application of that knowledge.").

The two cases on which Plaintiff relies to support its argument that withdrawal of the reference is not required even when it is clear that the Bankruptcy Court lacks final adjudicative authority and the defendant is entitled to a jury trial are inapposite. ECF No. 7 at 10. In *Kramer v. Mahia*, No. 12-MC-794 DLI, 2013 WL 1629254 (E.D.N.Y. Apr. 15, 2013), "the Bankruptcy Court ha[d] administered the adversary proceeding for approximately a year and half, overseen discovery, held hearings and decided the related sanctions motion," and "Defendant willfully and needlessly protracted the litigation by raising baseless counterclaims, responding late to court orders, failing to respond to discovery requests, making multiple adjournment requests, and refusing to participate in the evidentiary hearing on the sanctions motion before the Bankruptcy Court." *Id.* at *5. Similarly, in *Pryor v. Tromba,* No. 13-CV-676 JFB, 2014 WL 1355623 (E.D.N.Y. Apr. 7, 2014), the "defendant's demand for a jury trial was untimely" and there were pending motions for a default and for summary judgment." *Id.* at *8.

Here, the Bankruptcy Court's involvement has been limited to two brief scheduling conferences. No motions have been filed, and there is no dispute that Defendant timely filed his jury demand. Defendant has not (nor is accused of) flouting the Bankruptcy Court's deadlines or not complying with any obligation in this case. Plaintiff's contention that the adversary proceeding "can be decided by the Bankruptcy Court through dispositive motions" is pure *ipse dixit*. ECF No. 7 at 12. Particularly if Plaintiff is granted leave to amend its complaint to assert its proposed

fraudulent transfer claims, the likelihood of this matter being resolved on summary judgment will dramatically be reduced. *See Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 201–02 (2d Cir. 1991) ("Ordinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment, being a factual question involving the parties' states of mind.").

IV. **Plaintiff's Breach of Promissory Note Claim Is Subject to Arbitration**

Plaintiff claims that it unclear whether Goldman had authority to bind the Debtor to the arbitration provision in the November 2015 Agreement and whether its breach of promissory note claim against Defendant falls within the provision's scope. Neither argument is convincing.

At the outset, Plaintiff concedes that Goldman was the Debtor's "sole shareholder" and "manager of the Debtor's business operations" from the Debtor's founding in September 2014 until shortly before it filed for bankruptcy in December 2021. ECF No. 7 at 2. Accordingly, there is no question that Goldman had authority to bind the Debtor to the November 2015 Agreement.

Plaintiff's argument that the Debtor was not involved with the property-owning entities identified in the November 2015 Agreement and that the agreement only implicated personal rights and obligations between Defendant and Goldman is particularly reckless. ECF No. 7 at 17–18. The organizational chart that the Debtor filed in connection with its chapter 11 plan established the Debtor indirectly owned 100% of 41-21 28th St. Acquisition LLC, The North Flats LLC, and Spencer Albee Equities LLC. Aloe Reply Decl., Ex. Q. Accordingly, there is no basis for Plaintiff's assertion that the extensive services Defendant performed, as detailed in the November 2015 agreement, were intended to benefit Goldman personally, as opposed to the Debtor, and that Goldman personally, and not the Debtor, was obligated to either pay Defendant the specified sums or deliver to Defendant the specified interests in those entities (which the Debtor owned 100%).

Plaintiff has failed to submit any evidence tending to disassociate the promissory note and subsequent release from the Debtor's obligations to Defendant under the November 2015

8

Agreement. Defendant's deposition testimony (that Plaintiff submitted) makes clear that the promissory note was structured as an interim partial payment of the amounts owed to Defendant under the November 2015 Agreement pending Defendant's receipt of the equity interests he was entitled to receive from the Debtor. ECF No. 8-1 at 77:13–79:10. The agreement executed on October 1, 2020, which provided for the Debtor's release of the note in exchange for Defendant's release of his right to receive the payments or equity interests that the Debtor owed him under the November 2015 Agreement, unambiguously supports Defendant's testimony that November 2015 Agreement, the promissory note, and the release all were inextricably intertwined. ECF No. 3-1 at 241–242 of 246. This evidence, coupled with provision requiring arbitration of "any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement," ECF No. 3-1 at 234 of 246, prevents Plaintiffs from overcoming the presumption in favor of arbitrability.

V. **Defendant Did Not Waive His Right to Arbitrate**

There is no support for Plaintiff's argument that Defendant waived his right to arbitration based on the timing of his motion. In *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156 (2d Cir. 2010), it was the plaintiff who sought to compel arbitration of its own claims against the defendant several months after it "acted inconsistently with its contractual right to arbitration" by filing its claims in court in the first instance. *Id.* at 160–61. Here, Defendant has not filed any affirmative claim or counterclaim in court.

In *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002), despite that the defendant waited until after the plaintiff moved for summary judgment before moving to compel arbitration, the Second Circuit held that the defendant did not waive its right to arbitration because plaintiff was not substantively prejudiced by any merits-based rulings in the case and did not suffer any excessive costs or time delays. *Id.* at 105. Here, there has not even been a motion for summary judgment (or any other merits-based) motion.

9

Plaintiff's claim of prejudice is nothing short of frivolous. It is undisputed that the Bankruptcy Court has not made any substantive rulings since adversary proceeding has been pending. Nor have there been any delays, as Defendant never moved to stay the adversary proceeding and timely complied with all of his discovery obligations.

After acknowledging that Plaintiff has already obtained Defendant's deposition testimony and substantial document productions in discovery, Plaintiff questions "whether such discovery would even be available in proceedings before a Rabbinical court." ECF No. 7 at 19–20. That question is moot because Plaintiff has already obtained from Defendant all of the party discovery permitted in federal court. Plaintiff's contention that compelling arbitration might deprive Plaintiff of the opportunity to obtain Goldman's testimony is equally disingenuous for three reasons.

First, Plaintiff subpoenaed Goldman in the adversary proceeding December 2023 and has scheduled his deposition for March 20, 2024, making it almost certain that Plaintiff will have already obtained Goldman's deposition testimony before this this Court decides this motion. Second, even if the Court compels arbitration before Goldman sits for the deposition pursuant to the subpoena that Plaintiff issued in this adversary proceeding, Plaintiff is separately pursuing a Rule 2004 examination of Goldman in the Debtor's chapter 11 case, through which it can obtain the same testimony. Finally, Plaintiff's claim that it is "unclear" whether it would be able to obtain Goldman's testimony in connection with an arbitration is baseless, as Goldman is a party to the same arbitration agreement as Plaintiff and Defendant, and even if he were not, section 7 of the Federal Arbitration Act enables parties obtain non-party testimony through arbitrator-issued subpoenas. *See generally Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 579 (2d Cir. 2005).

## **CONCLUSION**

The Court should withdraw the reference in this adversary proceeding and compel Plaintiff to arbitrate its claim against Defendant in accordance with the November 2015 Agreement.

10

Dated: New York, New York
March 15, 2024

By: */s/ Paul H. Aloe*
Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendant Yoel Silberstein*