# Exhibit "K"

# KTAP

## KUDMAN • TRACHTEN • ALOE • POSNER LLP

─────────── Attorneys at Law ───────────

David N. Saponara • Direct (212) 868-1887 • dsaponara@kudmanlaw.com

**VIA ECF ONLY**                                              July 3, 2024
Chief Judge Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, New York 10004

      **Re:**    *AYH Wind Down LLC v. Silberstein*, Adv. Pro. No. 23-01180-mg

Dear Chief Judge Glenn:

      The Court should deny plaintiff AYH Wind Down LLC's request to move for summary judgment [Docket No. 29] for several reasons.

      *First*, defendant has a motion pending in the district court (S.D.N.Y. Case No. 1:24-cv-00800-JHR) to withdraw the reference and compel arbitration.[1] Defendant's motion addresses which court (if any) should hear the matter and as such should be decided first. This Court determined in a separate adversary proceeding plaintiff brought to enforce a nearly identical promissory note that the claim was non-core and that the Court could at most enter proposed findings of fact and conclusions of law. *See AYH Wind Down LLC v. Engelman*, No. 21-12051 (MG), 2024 WL 1460157 (Bankr. S.D.N.Y. Apr. 3, 2024). Plaintiff's promissory note claim here is similarly non-core, preventing the Court from granting plaintiff summary judgment and entering a final judgment. *See In re TS Emp., Inc.*, 641 B.R. 753, 760 n.12 (Bankr. S.D.N.Y. 2022). The Court's inability to finally adjudicate this matter extends to plaintiff's recently added fraudulent transfer claims because defendant never filed a proof of claim in the Debtor's case. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 37–40 (2014); *In re Lyondell Chem. Co.*, 467 B.R. 712, 719–23 (S.D.N.Y. 2012); *In re Swift Air, LLC*, No. 2:12-BK-14362-DPC, 2019 WL 1266100, at *5 (Bankr. D. Ariz. Mar. 15, 2019). Moreover, unlike in *Engelman*, defendant timely demanded a jury trial on all issues [Docket Nos. 10, 28], and therefore preserved his rights under the Seventh Amendment and 28 U.S.C. § 157(e) for the jury trial to proceed in the district court.

      *Second*, the issue of arbitrability must be addressed before any court can address the merits of the controversy. Defendant will be irreparably harmed by the Court rendering a merits-based decision on any portion of plaintiff's claims because it will deprive him of his right to arbitrate. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*, No. 16-CV-5699 (JGK), 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016). In *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the United States Supreme Court held that proceedings must be stayed if there is an appeal from the denial of motion to compel arbitration—such a stay is mandatory and automatic. Here, defendant's motion to compel arbitration has not even been decided. Perforce, a stay of proceedings seeking to finally adjudicate the merits is required here.

      *Third*, even if it were appropriate to proceed to the merits (it is not), plaintiff cannot prove that it has standing to enforce the promissory note. Plaintiff predicates its standing on the Debtor's

───────────────────────

[1] The motion was fully briefed on March 15. On April 25, defendant asked Judge Rearden to expedite the motion.

KUDMAN • TRACHTEN • ALOE • POSNER LLP
July 3, 2024
Page | 2

plan, which vested in plaintiff its "claims and Causes of Action . . . against any third parties" [Docket No. 27 ¶¶ 2–7]. However, a party seeking to enforce a promissory note must demonstrate that it is either an assignee or the holder of the note under the U.C.C. *See HSBC Bank USA, Nat'l Ass'n v. Herod*, 203 A.D.3d 805, 807 (2d Dep't 2022). Plaintiff does not allege, and has not disclosed any evidence demonstrating, that the Debtor negotiated the promissory note by endorsing it to plaintiff (or in blank) and delivering the original or otherwise assigned the note—as opposed to the undescribed "claims and Causes of Action" referenced in the plan—to plaintiff. *See* N.Y. U.C.C. §§ 3-201, 3-202; *see also* 11 U.S.C. § 1129(a)(16) ("All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law . . . .").

*Fourth*, if the merits were to be addressed (which cannot occur at this stage), there are myriad disputed issues of material fact. Contrary to plaintiff's false representation, defendant never confirmed that he received any loan proceeds. Indeed, plaintiff has not disclosed any evidence showing that the Debtor actually funded the promissory note, let alone to whom. Plaintiff amended its complaint after discovery to add four new claims seeking to circumvent the Debtor's release of the promissory note in October 2020 in settlement of defendant's claims. Plaintiff's conclusory allegations that there was no agreement between the Debtor and defendant and that defendant had no claims against the Debtor are gutted by a November 2015 agreement (which plaintiff ignores) and corroborating testimony from defendant and Yoel Goldman (and other disclosed witnesses who would testify). The November 2015 agreement details the valuable services that defendant performed and the remuneration that the Debtor was obligated to provide. It recites that defendant successfully brought Yoel Gluck in as a partner in Albee Square, North Flats, and LIC that he was entitled to receive either 10% interests in the entities that owned those properties or payments of $3,325,000 for Albee Square, $1,500,000 for North Flats, and $1,925,000 for LIC. Goldman confirmed during his deposition that the Debtor—not Goldman—was the direct or indirect owner of Albee Square, North Flats, and LIC.[2] As the beneficial owner of those properties, the Debtor received the benefit of defendant's services. And as a party to the November 2015 agreement, the Debtor was obligated to compensate defendant by paying him the specified amounts or percentage equity interests that the Debtor held in the limited liability companies that owned those properties.

Plaintiff's attempt to disconnect the release of the promissory note from the November 2015 agreement, and to instead connect it to the Debtor's default on its bond obligations at the end of November 2020, also falls flat. Goldman testified that he did not anticipate that the Debtor was at risk of defaulting, explaining that the Debtor was in the process of closing large transactions that would raise significant cash. Goldman added that "it was the right thing to do at that time, because [defendant] was anyways owed much more money than" the promissory note that was being released. This testimony—the credibility of which this Court cannot weigh on summary judgment—contradicts plaintiff's allegations that Goldman "knew that a default on the Debtor's $800,000 million bonds was imminent" and caused the Debtor to release the promissory note specifically to frustrate the Debtor's ability to pay bondholders [Docket No. 27 ¶¶ 73–75]. *See Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017); *Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 201–02 (2d Cir. 1991).

---

[2] The organizational chart in the Debtor's disclosure statement confirms that it owned Albee Square, North Flats, and LIC. *See In re All Year Holdings Limited*, S.D.N.Y. Bankr. Case No. 21-12051, Docket No. 157 at 252 of 802.

KUDMAN • TRACHTEN • ALOE • POSNER LLP
July 3, 2024
Page | 3

Respectfully submitted,

David N. Saponara

cc:    Plaintiff's Counsel (via ECF only)