**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ALL YEAR HOLDINGS LIMITED,<br><br>                                   Debtor. | Case No. 1:24-cv-00800-JHR<br><br>Chapter 11<br>Case No. 21-12051-mg |
| AYH WIND DOWN LLC, through Ofer Tzur and Amir Flamer, solely in their joint Capacity as Claims Administrator,<br><br>                                   Plaintiff,<br><br>               -against-<br><br>YOEL SILBERSTEIN,<br><br>                                   Defendant. | Adv. Pro. No. 23-01180-mg |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION TO STAY ADVERSARY PROCEEDING
PENDING DECISION ON DEFENDANT'S MOTION TO WITHDRAW
THE REFERENCE AND COMPEL ARBITRATION**

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendant Yoel Silberstein*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

    I.   Defendant's Stay Motion Is Procedurally Proper ............................................................. 2

    II.  Defendant Motion to Withdraw the Reference and Compel Arbitration Is Meritorious ..... 4

       A. Withdrawal of the Reference Is Appropriate ........................................................... 4

       B. Plaintiff's Claims Are Within the Scope of the November 2015 Agreement's
         Broad Arbitration Clause ........................................................................................ 7

   III. Plaintiff Has Conceded the Irreparable Harm and Public Interest Elements of
      Defendant's Stay Motion ........................................................................................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Corp. v. Syniverse Techs., Inc.*,
No. 12-CV-1812 (NRB), 2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014) ........................................ 10

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ..................................................................................................... 9, 10

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
643 F. Supp. 3d 421 (S.D.N.Y. 2022) ........................................................................... 10

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
462 B.R. 457 (S.D.N.Y. 2011) ........................................................................................ 5

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*,
No. 16-CV-7126 (GBD), 2018 WL 6618389 (S.D.N.Y. Dec. 18, 2018) ........................ 8

*Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*,
931 F.2d 196 (2d Cir. 1991) ........................................................................................... 9

*HDI Glob. SE v. Lexington Ins. Co.*,
232 F. Supp. 3d 595 (S.D.N.Y. 2017) ........................................................................... 10

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993) ............................................................................................. 4

*In re Taub*,
470 B.R. 273 (E.D.N.Y. 2012) ....................................................................................... 3

*In re UBS AG Sec. Litig.*,
No. 07-CV-11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ..................... 10

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
626 F.3d 156 (2d Cir. 2010) ........................................................................................... 8

*Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*,
634 B.R. 226 (S.D.N.Y. 2021) ....................................................................................... 6

*S.E.C. v. Pension Fund of Am., L.C.*,
No. 05-20863-CIV, 2005 WL 8156247 (S.D. Fla. Nov. 7, 2005) .................................. 3

*Tese-Milner v. Coalition, Inc.*, No. 24-CV-04101 (ER),
2024 WL 3666381 (S.D.N.Y. Aug. 5, 2024) ........................................................... 4, 5, 6

# **PRELIMINARY STATEMENT**[1]

Plaintiff's opposition to Defendant's stay motion is predicated on the false assertion that Defendant is seeking to "derail" the progression of the parties' dispute. The record decidedly shows that is not true. Defendant's motion to withdraw the reference and compel arbitration was never motivated by a desire to delay the progression of the adversary proceeding. Rather, it was to ensure that Defendant has an opportunity to have his rights adjudicated in the appropriate forum— i.e., the arbitral forum designated in the November 2015 Agreement or an Article III court.

Instead of seeking to halt the adversary proceeding at the start—for which Plaintiff surely would have cried foul and accused Defendant of seeking to avoid discovery and interfere with the progression of Plaintiff's claims—Defendant allowed Plaintiff to obtain wide-ranging discovery (likely exceeding what Plaintiff would have been able to obtain in arbitration) on the short timeline dictated by the Bankruptcy Court. Defendant also permitted Plaintiff to amend its complaint after the close of discovery without objection. At the same time, Defendant preserved his rights by promptly moving to withdraw the reference and compel arbitration and by declining to seek either discovery from Plaintiff or any merits-based rulings that would change the landscape of the parties' dispute should this Court send it to arbitration, where it properly belongs.

The timing of the stay motion presently before this Court is consistent with Defendant's measured approach to the adversary proceeding. The Bankruptcy Court has efficiently overseen all of the pretrial proceedings necessary to ready the case for adjudication on the merits. As Plaintiff puts it: "Documents have been exchanged. Witnesses have been deposed. Pleadings have been amended." ECF No. 15 at 1. Defendant allowed these steps to be taken in the ordinary course because they would be necessary whether the case proceeds in arbitration or in this Court.

---

[1] Capitalized terms have the meanings used in Defendant's opening brief. ECF No. 14.

There is no dispute that the Bankruptcy Court cannot finally adjudicate this matter. That being so, allowing summary judgment to proceed while Defendant's motion to withdraw the reference and compel arbitration remains pending creates not a risk of inefficiency, increased costs, and duplicative litigation but a certainty. More importantly, it will irreparably harm Defendant by depriving him of his right to have an arbitrator, and not a court, decide the merits of the dispute in the first instance. Whatever nominal delay Plaintiff may experience in the prosecution of its claims while this Court decides Defendant's fully briefed motion to withdraw the reference and compel arbitration pales in comparison to the prospect of Defendant losing the right to have the dispute decided in arbitration—a right that will be irretrievably lost if the Bankruptcy Court is permitted to pass on the merits of the parties' claims and defenses on Plaintiff's summary judgment motion. The strong federal policy favoring arbitration requires this Court to step in and stay proceedings in the Bankruptcy Court to prevent that loss from occurring.

**ARGUMENT**

**I.  Defendant's Stay Motion Is Procedurally Proper**

Plaintiff's objection to Defendant seeking a stay from this Court in the first instance lays bare that its true aim is force Defendant into a situation where he loses his right to arbitration because the Bankruptcy Court will decide summary judgment before this Court decides his motion. Plaintiff does not dispute that the Bankruptcy Court has twice already overruled Defendant's objections to proceeding with summary judgment, which were based on the same arguments and concerns that Defendant has raised in the stay motion he filed in this Court. ECF No. 14 at 9. Thus, Plaintiff concedes that Defendant is correct that first moving for a stay in the Bankruptcy Court would only waste time and duplicate efforts because the issue of whether a stay will be granted ultimately would end up before this Court.

Defendant faces a legitimate timing problem similar the one presented in *S.E.C. v. Pension Fund of Am., L.C.*, No. 05-20863-CIV, 2005 WL 8156247 (S.D. Fla. Nov. 7, 2005). Plaintiff acknowledges that Defendant's motion to withdraw the reference and compel arbitration "was fully briefed as of March 15, 2024, and remains pending." ECF No. 15 at 1. Defendant already requested on April 25, 2024, that this Court expedite consideration of the motion, explaining, among other things, that he would suffer irreparable harm by losing his right to arbitration if the Bankruptcy Court were permitted to entertain summary judgment and that "[a] prompt decision on defendant's motion . . . will provide clear guidance as to where the merits of this case must be adjudicated and save the parties and the courts from spending time and resources addressing substantive matters in an inappropriate forum." ECF No. 11. Nevertheless, Defendant's motion remains pending in this Court, and the Bankruptcy Court is prepared to proceed with summary judgment briefing that will begin this month and result in the motion being heard in October.

*In re Taub*, 470 B.R. 273 (E.D.N.Y. 2012), on which Plaintiff relies, is plainly inapposite. As an initial matter, *Taub* involved a motion for a stay pending appeal, not a motion to withdraw the reference or compel arbitration. Moreover, the bankruptcy court orders at issue were for the sale of the debtor's property, and the debtor waited *seven weeks* before seeking a stay in the district court and offered no explanation for the delay. *Id.* at 275–76. Defendant, in contrast, filed his motion to stay the adversary proceeding *nine days* after the pre-motion conference during which the Bankruptcy Court overruled Defendant's objections to proceeding with summary judgment and established a briefing schedule for Plaintiff's motion, placing Defendant at risk of irretrievably losing his right to arbitrate this dispute before the Bankruptcy Court entertains summary judgment.

## II. Defendant Motion to Withdraw the Reference and Compel Arbitration Is Meritorious

### A. Withdrawal of the Reference Is Appropriate

Plaintiff implicitly acknowledges that its claims against Defendant are non-core and that the Bankruptcy Court lacks constitutional authority to finally adjudicate the claims by expressly limiting its opposition to "questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other factors" set forth in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993). ECF No. 15 at 8–11. What Plaintiff fails to recognize, however, is that the Bankruptcy Court's inability to adjudicate the parties' dispute informs the other *Orion* factors on which Plaintiffs attempts to rely. A recent decision from Judge Ramos in *Tese-Milner v. Coalition, Inc.*, No. 24-CV-04101 (ER), 2024 WL 3666381 (S.D.N.Y. Aug. 5, 2024), granting a defendant's motion to withdraw the reference filed at the outset of the case, demonstrates this interplay and emphasizes the strength of Defendant's motion to withdraw the reference in the adversary proceeding.

In *Tese-Milner*, the chapter 7 trustee brought an adversary proceeding against the debtor's pre-bankruptcy insurers alleging declaratory judgment and breach of contract claims based on a pre-bankruptcy business interruption claim that the insurers had denied, and the insurers moved to withdraw the reference. *Id.* at *1. There was a separate business interruption claim involving the same insurers for which the bankruptcy court approved a settlement before the trustee commenced the adversary proceeding. *Id.* At the outset of the decision, Judge Ramos determined that the bankruptcy court lacked final adjudicatory authority and that the trustee's claims against the insurers were non-core. *Id.* at *3–6. He then turned to the other *Orion* factors.

Beginning with judicial efficiency, Judge Ramos explained: "Because the bankruptcy court lacks constitutional authority to enter final judgment in these claims, were the Court to deny

4

[Defendant's] motion, the bankruptcy court would be limited to submitting proposed findings of fact and conclusions of law for *de novo* review by a district court. In such cases, it is generally 'inefficient to allow proceedings to go forward knowing that they will have to be substantially repeated.'" *Id.* at \*6 (S.D.N.Y. Aug. 5, 2024) (quoting *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011)). The trustee argued that "the bankruptcy court has acquired a detailed understanding of the Debtor and its history as well as the Policy, through its prior approval for the settlement for [Claim One] and the currently pending Motion to Dismiss filed by [the Insurers]." *Id.* at \*6. Judge Ramos rejected the trustee's argument: "Because the claims at issue are recently filed contract claims that the bankruptcy court does not have any specialized familiarity of or experience with, withdrawing the reference will avoid the duplication of effort in resolving the case and is therefore a more efficient use of judicial resources." *Id.* at \*7.

Here, Plaintiff attempts to make the same argument as the trustee in *Tese-Milner*, claiming that "[t]he Debtor's bankruptcy case has been before Chief Judge Glenn for more than two years" and "Chief Judge Glenn has deep knowledge of the Debtor and its prepetition dealings." ECF No. 15 at 10. However, like in *Tese-Milner*, this adversary proceeding was commenced years after the Debtor filed for bankruptcy, and the Bankruptcy Court's institutional knowledge of the Debtor's prepetition business and bankruptcy case are largely irrelevant to resolution of this adversary proceeding, which turns on the effectiveness of the October 2020 settlement agreement and release of the promissory note, which pre-dated the Debtor's bankruptcy case by more than a year.

Addressing uniform administration of bankruptcy law, Judge Ramos determined that "this factor is neutral because the adversary proceeding concerns non-core claims that do not arise under bankruptcy law." *Tese-Milner*, 2024 WL 3666381, at \*7. The same is true here. In any event, Plaintiff's opposition fails to address the uniformity factor. ECF No. 15 at 8–11.

Turning to jury trial rights, Judge Ramos acknowledged that "[t]he Insurers have demanded a jury trial on the causes of action triable by a jury" and that "[b]ankruptcy courts are prohibited from conducting jury trials on claims over which they lack final adjudicative authority," but he did "not attach much weight to this factor" because of the early posture of the case. *Id.* at *8. This case is not in the same early posture as *Tese-Milner*. Here, pleadings and discovery are complete, and Plaintiff is planning to proceed with a motion for summary judgment. As previously explained, there is no more efficiency to be gained by the Bankruptcy Court's continued oversight of the adversary proceeding. Allowing the Bankruptcy Court to entertain summary judgment and issue proposed findings of fact and conclusion of law only for the parties to relitigate the issues in this Court for *de novo* review would only cause delays and waste resources. *See Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*, 634 B.R. 226, 238 (S.D.N.Y. 2021) ("The need to litigate first in the bankruptcy court and then again in the district court could make the proceedings generally more costly for the parties.").

As to forum shopping, Judge Ramos explained that the bankruptcy court's lack of final adjudicatory authority affects that factor, too: "[D]ue to the bankruptcy court's limited adjudicative authority, these claims may end up before a district court irrespective of the outcome of this motion. Thus, consideration of forum shopping does not weigh against withdrawing the reference." *Id.* at *8. Here, the Bankruptcy Court also lacks authority to finally adjudicate the adversary proceeding, and it will ultimately be adjudicated in this Court if arbitration is not compelled.

In sum, because all of the applicable *Orion* factors weigh in Defendant's favor, there is a strong likelihood that Defendant will prevail on his motion to withdraw the reference.

### B. Plaintiff's Claims Are Within the Scope of the November 2015 Agreement's Broad Arbitration Clause

Plaintiff attempts to argue that that it is unclear whether Goldman had authority to bind the Debtor to the arbitration provision in the November 2015 Agreement and that its claims concerning the promissory note and release do not fall within the scope of the November 2015 Agreement's broad arbitration agreement. ECF No. 15 at 11–13. Neither argument has any merit.

*First*, Plaintiff has already conceded that Goldman was the Debtor's "sole shareholder" and "manager of the Debtor's business operations" from the Debtor's founding in September 2014 until shortly before it filed for bankruptcy in December 2021. ECF No. 7 at 2. Accordingly, there is no question that Goldman had authority to bind the Debtor to the November 2015 Agreement.

*Second*, the record directly undermines Plaintiff's contention that the note and release have nothing to do with the November 2015 Agreement. Indeed, the evidence shows that they all are inextricably intertwined. The November 2015 Agreement memorialized the work that Defendant performed for the Debtor's benefit and Defendant's entitlement to receive specified compensation his services—i.e., (a) 10% interests in the entities that owned those properties or (b) payment of $3,250,000 for Albee Square, $1,500,000 for North Flats, and $1,925,000 for LIC. ECF No. 3-1 at 229–236 of 246. The Debtor failed to fulfill its obligations to Defendant, so the note structured as an interim partial payment of the amounts owed to Defendant under the November 2015 Agreement pending Defendant's receipt of the equity interests he was entitled to receive from the Debtor. ECF No. 8-1 at 77:13–79:10. The October 2020 Agreement, which provided for the Debtor's release of the promissory note in exchange for Defendant releasing his claims against the Debtor, "stipulate[d] that the amount owed to [Defendant] is, at minimum, more than six million dollars, and [Defendant] demands payment hereof or a partnership in the aforementioned properties according to their appraised value at the time of purchase by three expert appraisers, as

7

was initially agreed upon" in the November 2015 Agreement." ECF No. 3-1 at 241–243 of 246. Accordingly, Plaintiff's claims in the adversary proceeding, which seek to undo the settlement provided for in the October 2020 Agreement and the Debtor's release of the promissory note, unquestionably "concern[] this [November 2015] agreement" and therefore are subject to the parties' agreement to arbitrate. ECF No. 3-1 at 234–235 of 246.

Plaintiff's backup argument that Defendant waived his right to arbitration is baseless, and the cases on which it relies are readily distinguishable. ECF No. 15 at 13–14. In *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156 (2d Cir. 2010), it was the plaintiff who sought to compel arbitration of its own claims against the defendant several months after it "acted inconsistently with its contractual right to arbitration" by filing its claims in court in the first instance. Here, Defendant has not filed any affirmative claim or counterclaim in the Bankruptcy Court. In *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, No. 16-CV-7126 (GBD), 2018 WL 6618389 (S.D.N.Y. Dec. 18, 2018), the defendant that sought to stay the case pending arbitration had "vigorously litigated" the case by moving to dismiss and engaging in substantial discovery and "waited nearly two years" to file its motion. Defendant, in contrast, did not move to dismiss, did not request any discovery from Plaintiff, did not oppose Plaintiff's motion for leave to amend its complaint, and promptly filed its motion to compel arbitration after Plaintiff commenced the adversary proceeding.

Plaintiff's prejudice argument is equally baseless because compelling arbitration would not result in "reboot[ing] a case that has reached the summary judgment stage from scratch." ECF No. 15 at 14. The parties have already exchanged two rounds of pleadings and completed discovery. Once arbitration is compelled, the parties will be able to swiftly proceed to an evidentiary hearing for a final adjudication on the merits—saving the parties from wasting considerable time and

8

resources briefing summary judgment in a case that clearly involves dispute issues of material fact given that Plaintiff amended its complaint to assert actual fraudulent transfer claims that turn on Goldman's intent in authorizing the Debtor to release Defendant from the promissory note in October 2020. *See Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 201–02 (2d Cir. 1991) ("Ordinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment, being a factual question involving the parties' states of mind.").

### III. Plaintiff Has Conceded the Irreparable Harm and Public Interest Elements of Defendant's Stay Motion

Plaintiff's opposition does not even attempt to address Defendant's arguments that the loss of his right to have this dispute decided in arbitration necessarily constitutes irreparable harm and that the public interest is served by validating and enforcing the strong federal policy favoring arbitration. *See* ECF No. 14 at 15–18; ECF No. 15 at 14–15. Instead, Plaintiff advances five sentences of conclusory, non-responsive, and unsupported assertions that are directly undermined by the principles set forth in the Supreme Court, Second Circuit, and lower court cases on which Defendant's arguments are based.

One of the chief reasons parties agree to arbitration is to have a non-judicial adjudication of their dispute. A court's assessment of any portion of the merits of a dispute, even if only partial and ultimately non-binding, is a bell that cannot be unrung, as it provides an opportunity for one side or the other to take advantage of any favorable rulings that a court makes before arbitration is compelled. Courts do not issue rulings on the merits of arbitrable disputes because do so would undermine the arbitration and defeat the benefits the parties bargained for by agreeing to arbitrate. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) ("If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like)

9

would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along."); *HDI Glob. SE v. Lexington Ins. Co.*, 232 F. Supp. 3d 595, 602 (S.D.N.Y. 2017) ("On a motion to compel arbitration, a district court must determine whether there is a valid arbitration agreement, *but the merits of a dispute must be left to the arbitrator*.") (emphasis added). Here, the Bankruptcy Court's issuance of proposed findings of fact and conclusions of law on Plaintiff's summary judgment motion, although not a *final* adjudication of the merits, is a *judicial* adjudication that certainly would impact any arbitrator's eventual ruling. A stay pending this Court's determination of Defendant's motion is necessary to protect against Defendant's "irretrievable los[s]" of his right to arbitration by allowing the Bankruptcy Court to entertain summary judgment before this Court decides whether the dispute belongs in arbitration. *Coinbase, Inc.*, 599 U.S. at 743.

Plaintiff's failure to squarely respond to Defendant's arguments on these point amounts to a concession of the issues. *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."); *AT&T Corp. v. Syniverse Techs., Inc.*, No. 12-CV-1812 (NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) ("Perhaps recognizing the futility of contesting this issue, AT&T did not even discuss it in its opposition brief. AT&T's silence concedes the point."); *In re UBS AG Sec. Litig.*, No. 07-CV-11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) (holding that argument not addressed in opposition brief is waived).

## **CONCLUSION**

For the reasons explained above and in Defendant's moving brief, the Court should stay proceedings in the Bankruptcy Court pending this Court's decision on Defendant's motion withdraw the reference and compel arbitration.

Dated: New York, New York
August 12, 2024

By: */s/ Paul H. Aloe*
Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE POSNER LLP
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendant Yoel Silberstein*