**CHAPMAN**
Focused on Finance

**Michael Friedman**
Partner

1270 Avenue of the Americas
30th Floor
New York, New York  10020-1708

T 212.655.6000
D 212.655.2508
friedman@chapman.com

June 9, 2025

**VIA EMAIL**

Hon. Jennifer H. Rearden
United States District Court
500 Pearl St., Courtroom 12B
New York, NY 10007-1312

Re: *AYH Wind Down LLC v. Silberstein*
Case No. 1:24-cv-00800-JHR

Dear Judge Rearden:

In accordance with Your honor's Order dated May 29, 2025 (ECF No. 21), Plaintiff AYH Wind Down LLC ("**Wind-Down Co**"), through Ofer Tzur and Amir Flamer, solely in their joint capacity as Claims Administrator, respectfully submits this supplemental letter brief to in opposition to Defendant's Motion to Compel Arbitration (ECF No. 13-8) addressing Counts II–V of the Amended Adversary Complaint.

**Preliminary Statement**

Defendant's argument is essentially a single immaterial point, which fails to address the question of arbitrability of Counts II through V.  Specifically, Defendant's focus on the timing of and nature of claims added by the Amended Adversary Complaint is misplaced as neither of those says anything about whether those claims are subject to arbitration.  That Counts II–V are live claims in a currently operative pleading is undisputed and indisputable. Chief Judge Glenn granted Plaintiff's motion to amend on May 3, 2024 (Case No. 23-01180-mg, ECF No. 26) and Defendant answered the Amended Adversary Complaint shortly thereafter.



June 9, 2025
Page 2

As discussed in Plaintiff's earlier briefing, the arbitration clause arises under the 2015 Agreement, a contract that, to the extent it can even be authenticated, was entered between Mr. Goldman and the Defendant in their personal capacities following alleged business dealings between the two men that predated the corporate existence of the Debtor. Accordingly, Plaintiff, as successor to the Debtor, cannot bound by an agreement struck at a time the Debtor did not even exist. This point applies equally to all counts in the Amended Adversary Complaint, including the newly added Counts II-V.

Further, the arbitration clause of the 2015 Agreement applies to only three categories of disputes: (1) disputes that "concern [the 2015] Agreement," (2) disputes that "concern any of the four properties mentioned [in the 2015 Agreement]," and (3) any other matter that "both parties agree as to being derived from the above properties." Those four properties of the 2015 Agreement are: "41-21 28th Street," "The North Flats," "Albee Square," and "19 Kent." *Id.* None of these three categories applies to Counts II-V of the Amended Adversary Complaint,.

**Count II—Constructive Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B)**

Count II, a claim of constructive fraudulent transfer, does not, and cannot, concern the 2015 Agreement. First, Count II is brought under 11 U.S.C. § 548(a)(1)(B), a bankruptcy-specific statute and thus a core claim under the bankruptcy code. Additionally, Count II only concerns documents that were formed after the 2015 Agreement—the October 1, 2020 Agreement and the Release. The underlying Note that makes of the central contract in this dispute also did not exist in 2015. All operative documents that animate the claims in this case post-date the 2015

**CHAPMAN**
**Focused on Finance**

June 9, 2025
Page 3

Agreement and its arbitration provision by five years. As such, claims surrounding them are outside the scope of the arbitration agreement between Mr. Goldman and Defendant.

Count II also does not concern any of related to the four properties that make up the subject matter of the 2015 Agreement because neither the October 1, 2020 Agreement nor the Release are related whatsoever to investments in 41-21 28th Street, The North Flats, Albee Square, and 19 Kent. Those real estate investments, which were negotiated between Defendant and Mr. Goldman personally, predated the very existence of the the October 1, 2020 Agreement and the Release by many years.

With respect to any assertion by Defendant that Count II and claims of fraudulent transfer fall under the third category of arbitrable claims, *i.e.*, "any matter that the parties both agree as to being derived from" the four properties, neither the Debtor nor Wind Down Co (a corporate entity formed pursuant to All Year Holdings Ltd's confirmed bankruptcy plan) have ever consented to arbitrating these claims under an arbitration provision struck in secret between Defendant and Mr. Goldman. Defendants asserting that October 1, 2020 Agreement and the Release relate to any of the four properties does not make it so.

### Count III—Actual Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A)

Count III alleges claims of actual fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A), again, a core bankruptcy claim under a bankruptcy-specific statute. Defendant appears to attack this claim on a quasi-dismissal argument, but the pleading standards of actual fraudulent transfer are irrelevant and inapplicable to the issue of whether Count III is subject to the three categories



June 9, 2025
Page 4

of arbitration outlined in the 2015 Agreement (not to mention the fact that Chief Judge Glenn permitted the Amended Adversary Complaint and Defendant then filed an Answer). Count III is not subject to arbitration in the same manner and for the same reasons as those that preclude Count II, claims of constructive fraudulent transfer, from being subject to arbitration. Plaintiff hereby incorporates each of those reasons previously stated above with respect to Count II and hereby adopts each argument as to Count III.

**Count IV—Fraudulent Transfer under N.Y. Debtor & Creditor Law § 273 (Release and October 1, 2020 Agreement)**

Count IV also only concerns the October 1, 2020 Agreement and the Release, which in turn cannot concern either the 2015 Agreement or the four properties because, again, both documents were constructed with the purpose of absolving Mr. Goldman's *personal* debts, not those of the Debtor, with Mr. Silberstein. Both documents were constructed over five years after the drafting of the 2015 Agreement and drafted for the purposes of defrauding the Debtors. As of October 1, 2020, Mr. Goldman had knowledge that a default on the Debtor's $800 million bond obligations was forthcoming. Mr. Goldman had knowledge that such a default would lead to him no longer possible singular control over the enforcement of the Note against his longtime and close friend, Mr. Silberstein. Mr. Goldman, therefore, chose to release Mr. Silberstein from the obligations under the Note and further exasperate the efforts of the Debtor's creditors to use the proceeds from the repayment of the Note to satisfy the Debtor's obligations to those same creditors. As such, the October 1, 2020 Agreement and the Release represent nothing more than a transaction created for the sole purpose of absolving Mr. Silberstein of any debt and with the intent to hinder,



June 9, 2025
Page 5

delay, or defraud the Debtor's creditors while the Debtor received nothing in return. Consequently, Count IV is not subject to arbitration.

**Count V—Fraudulent Transfer Under N.Y. Debtor & Creditor Law § 273 (The Note)**

Notably, Count V, an alternative claim, concerns the Note. Yet, the Note, just like the October 1, 2020 Agreement and the Release is not subject to the arbitration provision of the 2015 Agreement for three reasons. First, the arbitration provision in the 2015 Agreement was executed three years **before** the Note, which was executed in 2018. Second, the Note makes no mention of any of the four properties or its projects. The Note was not issued in connection with any of those four properties. Third, it is blatantly obvious that the parties do not agree (much less consent) as to whether Count V implicates the 2015 Agreement, let alone the four properties. As a result, Count V cannot constitute "any other matter that both parties agree as to being derived from the above properties."

Finally, and only to the extent the Court is somehow convinced that some of these claims fall under the 2015 Agreement's arbitration provision, it would be improper, inefficient, and imprudent to, as Defendant suggests, stay the non-arbitrable claims. There is nothing unusual about claims proceeding in parallel, and in fact it would make little sense to complete an arbitration process only to then pick up these claims (likely years later) that would directly and materially impact whatever the outcome of the arbitration proceeding was. Indeed, if an arbitration proceeding was advanced, it would very quickly run into the issues of the invalid October 1, 2020 Agreement and the Release, and so parallel paths makes more sense.



June 9, 2025
Page 6

                Respectfully submitted,

                CHAPMAN AND CUTLER LLP


                By: /s/ Eric S. Silvestri
                      Eric Silvestri

ESS
All counsel of record via ECF.

cc:  David T.B. Audley
      Eric S. Silvestri