UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re ALL YEAR HOLDINGS LIMITED,

                                    Debtor.

---

AYH WIND DOWN LLC, through Ofer Tzur
and Amir Flamer, solely in their joint capacity
as Claims Administrator,

                                    Plaintiff,

                    -v.-

YOEL SILBERSTEIN,

                                    Defendant.

24 Civ. 800 (JHR)

OPINION & ORDER

---

JENNIFER H. REARDEN, District Judge:

        Before the Court is Defendant Yoel Silberstein's motion to withdraw an adversary

proceeding from the United States Bankruptcy Court for the Southern District of New York and

to compel arbitration of Plaintiff AYH Wind Down LLC's claims.  For the reasons set forth

below, Defendant's motion to withdraw is GRANTED as to all counts of Plaintiff's Amended

Complaint.  Defendant's motion to compel arbitration is GRANTED as to Count I and DENIED

as to Counts II through V.

## I.        BACKGROUND

        On December 14, 2021, real estate development holding company All Year Holdings

Limited (the "Debtor") filed a voluntary bankruptcy petition under chapter 11 of title 11 of the

United States Bankruptcy Code.  *In re All Year Holdings Limited*, No. 21-12051 (MG) (Bankr.

S.D.N.Y.).  Before the petition was filed, the Debtor's sole shareholder and manager was Yoel

Goldman.  *Id.* at ECF No. 4.  As part of the Debtor's chapter 11 plan of reorganization (the

"Plan"), some of its legal claims, including "any and all claims and Causes of Action . . . that the

Debtor . . . may have against any third-parties," were "transferred to" Plaintiff AYH Wind Down

LLC. *Id.* at ECF No. 289 at 10, 24. Under the Plan, Plaintiff is authorized to "administer the liquidation, dissolution, sale and/or abandonment or similar action" of the Debtor's legal claims against third parties to recover additional property for distribution to the Debtor's creditors. *Id.* at 24.

### A. The Agreements Between Defendant and All Year Holdings Limited

This action relates to three agreements between Defendant Yoel Silberstein ("Defendant") and the Debtor. First, on November 23, 2015, the Debtor's shareholder and manager Goldman executed an agreement (the "2015 Agreement") with Defendant on behalf of the Debtor, other entities, and himself that Defendant would develop four properties: 436 Albee Square, 41-21 28 St. LIC, the North Flats, and 19 Kent. *See* ECF No. 3-1 (Aloe Decl.), Ex. N (2015 Agreement).[1] The 2015 Agreement provided that, in exchange for Defendant's development support on three of those properties—436 Albee Square, 41-21 28 St. LIC, and the North Flats (the "Equity Properties")—the Debtor would deliver either (a) a 10% equity interest in each of the entities that owned those properties, or (b) payment of $6,675,000.[2] *Id.* Section 18 of the November 2015 Agreement (the "Arbitration Agreement") stated that:

> For any question or doubt or dispute that shall arise between the parties, in all that concerns this agreement, or concerning any of the four properties mentioned above, both regarding fulfilling the essence of the agreement as well as regarding the payment of interest, as describe [*sic*] above, and also concerning the sale of the properties or any portion of them prior to renting out the apartments, or any other matter that both parties agree to being derived from the above properties, the parties shall turn to the mediator Rabbi Avraham Shlomo Ausch, or Rabbi Chaim

---

[1] The Court has reviewed the certified English translation of the original 2015 Agreement, which was handwritten and in Yiddish.

[2] The 2015 Agreement did not provide for Defendant to take an equity interest in the fourth property, 19 Kent. At the time of the 2015 Agreement, the Debtor was selling its shares in 19 Kent to an investor. 2015 Agreement. As it was "unclear at present how much [Defendant] w[ould] be owed" for his work on 19 Kent, the parties resolved to "mutually agree among themselves regarding the precise amount owed, and if they [we]re unable to reach an agreement, they sh[ould] turn to the third parties or the rabbinical court." *Id.*

> Mordechai Shtesel, who are acceptable to both and who may facilitate a compromise between them; and if they are unable to agree on which of them to turn to, or if they shall be otherwise unable to turn to them, they shall adjudicate the matter before the rabbinical court (*beis din*) of the Hisachdus Harabonim; and the signing of this agreement shall in full effect be equal to signing an arbitration agreement before the rabbinical court of the Hisachdus Harabonim mentioned above, and according to what is customary to sign at present before those rabbinical courts that allow for it to be full in effect according to the laws of arbitration.

*Id.* § 18.

Second, on March 21, 2018, Defendant signed a promissory note (the "Note") in the amount of $3,350,000 in favor of the Debtor (i.e., roughly half of the $6,675,000 that would satisfy his obligation under the 2015 Agreement), with a stated maturity date of March 30, 2019. Aloe Decl., Ex. B (Note). At his deposition, Defendant testified that Goldman agreed to the Note as partial payment for his obligations under the 2015 Agreement, but that "when [Defendant] g[o]t the shares," ECF No. 8-1 (Silvestri Decl.), Ex. 1 (Silberstein Dep.) at 16—referring to the 10% interest in the entities that owned the Equity Properties—"then [he and Goldman would] turn [the Note] back." *Id.* In other words, according to Defendant, the Note served as a placeholder payment until the Debtor provided the promised equity interest in the Equity Properties under the 2015 Agreement. Upon receipt of the equity, Defendant would repay the Note.

Finally, on October 1, 2020, Defendant and the Debtor entered into an agreement (the "2020 Agreement") that, among other things, provided that the Debtor would forgive the Note. Aloe Decl., Ex. O (2020 Agreement).[3] The 2020 Agreement settled a dispute between Defendant and the Debtor. *Id.* Specifically, Defendant sought repayment for his work on the Equity Properties, and "both parties stipulate[d] that the amount owed to [Defendant] [wa]s, at

---

[3] The Court has reviewed the certified English translation of the original 2020 Agreement as well, which was also handwritten and in Yiddish.

minimum, more than six million dollars." 2020 Agreement.  The 2020 Agreement stated that Defendant had "received a loan from [the Debtor], . . . and the amount due as of [the date of execution] [wa]s greater than four million dollars; but [Defendant] claim[ed] that the loan was [to be considered as such] only if he receive[d] shares in his name . . . and whereas he was never granted the shares owed to him for acting as agent, etc., the loan [wa]s therefore to be applied [as payment] for the aforementioned amount owed." *Id.*  Therefore, under the 2020 Agreement, "the parties . . . reached a compromise to conclusively resolve this dispute, . . . and agreed that [Goldman], on his own behalf and on behalf of [Debtor], w[ould] forgive the aforementioned loan, which [would] be applied as payment for what [wa]s legally owed to [Defendant]." 2020 Agreement.  On October 2, 2020, the Debtor "agree[d] to discharge [Defendant] from any claims, liabilities, and obligations under" the Note (the "Release").  Aloe Decl., Ex. P (Release).

### B.  The Instant Dispute

On September 19, 2023, Plaintiff brought this adversary proceeding against Defendant in the Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") based on the Debtor's claim against Defendant for repayment of the Note.  *AYH Wind Down LLC v. Silberstein*, 23-01180 (MG), ECF No. 1 (Bankr. S.D.N.Y. Sept. 19, 2023).  On February 2, 2024, Defendant moved in this Court to withdraw the reference to the Bankruptcy Court and to compel arbitration.  ECF No. 1.  On May 3, 2024, Plaintiff amended the complaint in the chapter 11 case to add claims for fraudulent transfer related to the 2020 Agreement and the Release.  ECF No. 13-8 (Saponara Decl.), Ex. H (Am. Complaint).

In the Bankruptcy Court, "Defendant did not affirmatively seek discovery from Plaintiff or request that the Bankruptcy Court rule on the merits in Defendant's favor based on the Debtor's release."  ECF No. 14 at 7.  "As a matter of efficiency," though, "Defendant allowed discovery and pleading amendments to proceed in the Bankruptcy Court."  *Id.*  Plaintiff moved

for partial summary judgment on its claims, and the Bankruptcy Court denied Plaintiff's motion in its entirety. *See* ECF No. 17-1. The parties agree that "the Bankruptcy Court has exhausted the limits of the pretrial proceedings that it is authorized to oversee." ECF No. 14 at 7; *see* ECF No. 19 (Tr.) at 3-4.

## II.    MOTION TO WITHDRAW THE REFERENCE

### A. Legal Standards

"Federal district courts have original jurisdiction over all civil proceedings 'arising under,' 'arising in,' or 'related to' cases under [t]itle 11, the United States Bankruptcy Code." *In re Celsius Network LLC*, 670 B.R. 379, 387 (S.D.N.Y. 2025) (quoting 28 U.S.C. § 1334(b)). "In the Southern District of New York, these cases are automatically referred to the Bankruptcy Court." *Id.* (citing *In re Standing Order of Reference Re: Title 11*, No. 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012)). "The district court may," however, "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."[4] *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, No. 20 Civ. 11011 (VEC), 2021 WL 1978560, at *2 (S.D.N.Y. May 17, 2021). In that regard, the "Second Circuit directs district courts to consider three factors." *In re TS Emp., Inc.*, No. 20 Civ.

---

[4] Section 157(d) requires a district court to withdraw a proceeding "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). "The conditions for mandatory withdrawal are construed narrowly, applying only 'where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.'" *Roman Cath. Diocese of Rockville Ctr. v. Arrowood Indem. Co.*, No. 20 Civ. 11011 (VEC), 2021 WL 1978560, at *2 n.7 (S.D.N.Y. May 17, 2021) (quoting *Picard v. Flinn Inv., LLC*, 463 B.R. 280, 283 (S.D.N.Y. 2011)). "As this matter concerns New York state law contract claims," New York state law creditor claims, and title 11 claims, "and not [other] questions of federal law, the portion of the statute mandating withdrawal in certain circumstances is not relevant to this action." *Id.*

9558 (JPC), 2021 WL 5087928, at *2 (S.D.N.Y. Nov. 2, 2021) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

"The first factor identified in *Orion* was 'whether the claim is core or non-core.'"[5]  *Id.* "While '[b]ankruptcy courts can hear both core proceedings and non-core proceedings that are otherwise related to a case under title 11,' they could traditionally enter 'final judgments only in core proceedings,' unless the parties otherwise consented." *Id.* (quoting *In re Lyondell Chem. Co.*, 467 B.R. 712, 718 (S.D.N.Y. 2012)).  In *Stern v. Marshall*, 564 U.S. 462 (2011), however, "the Supreme Court held that a bankruptcy court lacked constitutional authority to enter judgment on a 'core' claim because the claim nevertheless did not fall within the 'public right' exception to Article III." *TS Emp.*, 2021 WL 5087928, at *2 (quoting *Stern*, 564 U.S. at 487-89). As a result of this holding, "it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority." *Lyondell Chem.*, 467 B.R. at 719.  "[F]ollowing the Supreme Court's decision in *Stern v. Marshall*, the majority of courts in this Circuit have determined that the primary *Orion* factor—whether or not a proceeding is core or non-core—has been supplanted by a determination of whether the bankruptcy court may finally determine a proceeding or whether the bankruptcy court's proposals must be reviewed de novo by a district court [that] is governed by Article III." *Celsius Network*, 670 B.R. at 391 (quoting *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R. 579, 582 n.1 (S.D.N.Y. 2013)).

The second factor under *Orion* is "whether the claim is legal or equitable, and thus whether a right to a jury trial exists." *Lehman Bros. Holdings, Inc. v. Hometrust Mortg. Co.*, No. 15 Civ. 304 (PAE), 2015 WL 891663, at *2 (S.D.N.Y. Feb. 25, 2015).  Finally, "the Court must

---

[5] By statute, bankruptcy-related matters are divided into "core" and "non-core" proceedings.  28 U.S.C. § 157(b)-(c).  "Core proceedings include, but are not limited to . . . matters concerning the administration of the estate; . . . counterclaims by the estate against persons filing claims against the estate; . . . [and] orders to turn over property of the estate." *Id.*

consider whether other factors—including the efficient use of judicial resources, delay and cost to the parties, uniformity of bankruptcy administration, and prevention of forum shopping—counsel in favor of maintaining or withdrawing the reference." *Id.*

### B. Discussion

When Defendant moved to withdraw the reference, he cited "cause" for permissive withdrawal. ECF No. 4 (Br.) at 10 (quoting 28 U.S.C. § 157(d)). In particular, according to Defendant, the Bankruptcy Court "would lack final adjudicatory authority" over "the sole claim at issue in this adversary proceeding"—the claim for breach of the Note—because it was "unquestionably non-core" and required "a trial by jury." *Id.* at 11, 13-14. Defendant also argued that "the remaining *Orion* factors," including "judicial efficiency, cost and delay, and uniformity of bankruptcy administration, and the prevention of forum shopping[,] . . . weigh[ed] in favor of granting" his motion. *Id.* at 14. Plaintiff countered that, "despite the non-core nature of the breach of contract claim, the *Orion* factors weigh in favor of denying Defendant's Motion to Withdraw the Reference." ECF No. 7 (Opp.) at 16. According to Plaintiff, "[i]n addition to being impermissibly untimely, the Motion fails to offer sufficient reason to believe that the District Court, which is unfamiliar with the history, facts, and stakeholders of a complex and lengthy bankruptcy proceeding, would be able to administer this proceeding more efficiently." *Id.* at 16-17.

Since Defendant filed the motion, the state of play has changed in two significant ways. For one, the Bankruptcy Court granted Plaintiff leave to file an amended complaint, which asserts four core claims for fraudulent transfer. *See* Am. Complaint. For another, the case has now "proceeded through the close of discovery," and the Bankruptcy Court "denied [Plaintiff's] motion for summary judgment," so the case is "ready for jury trial." Tr. at 3-4. For three

reasons, in light of these developments, the Court concludes that Defendant has shown cause to withdraw the bankruptcy reference under the *Orion* factors. *See Celsius*, 670 B.R. at 392-93 (citing *Orion Pictures Corp.*, 4 F.3d at 1101-02).

First, "[p]ursuant to *Stern*, a bankruptcy court lacks constitutional authority to finally adjudicate a claim unless it involves adjudication of a public right, the defendant filed a proof of claim in the bankruptcy proceeding, or the parties consented to the bankruptcy court entering final judgment in the matter." *In re Empire Stat Grp., LLC*, No. 24 Civ. 4101 (ER), 2024 WL 3666381, at *3 (S.D.N.Y. Aug. 5, 2024) (citing *Lehman Bros.*, 2014 WL 3583089, at *3). Plaintiff makes no argument with respect to these exceptions, and the Court determines that "[n]one of the[m] appl[ies]." *Id.*

"The public right[s] exception applies when the claim at issue derives from a federal regulatory scheme, or it is deemed essential to a limited regulatory objective within the agency's authority that the claim be resolved by expert government agency." *Id.* (citing *Stern*, 564 U.S. at 490). The original claim for breach of a promissory note is a "common law contract claim," and, therefore, "does not implicate a public right." *Id.*; *see* also *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (deeming breach of contract claim "clearly outside" the public rights exception); *In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 266 (S.D.N.Y. 2012) (concluding that state law claims, including breach of contract, "are indisputably private rights"). Although the four additional fraudulent conveyance claims are "core" claims, *Lyondell Chem.*, 467 B.R. at 720, they are nevertheless "'quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy *res*,'" *Id.* (quoting *Granfinanciera, S.A., et al. v. Nordberg*, 492 U.S. 33, 56 (1989)). Thus, they "do not fall within

the public rights exception." *Id.* All claims in this action are "therefore matters of private right." *Id.*

Nor do the other *Stern* exceptions provide the Bankruptcy Court with final adjudicatory authority. Because "Defendant was not listed as a creditor" and "never filed a proof of claim," Br. at 6, the exception for situations in which the "defendant filed a proof of claim in the bankruptcy proceeding" does not apply, *Empire Stat Grp.*, 2024 WL 3666381, at *3. In addition, Defendant does not "consent to final adjudication of this matter by the Bankruptcy Court," Br. at 14, which "is required for a bankruptcy court to enter final orders and judgments in non-core matters." *Lyondell Chem.*, 467 B.R. at 721 (quoting Fed. R. Bankr. P. 7012(b)); *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674, 679 (2015) (concluding that "litigants may validly consent to adjudication [of private rights] by bankruptcy courts" because "allowing bankruptcy litigants to waive the right to Article III adjudication of *Stern* claims does not usurp the constitutional prerogatives of Article III courts").

Second, "[i]n this case, a jury demand has been filed," and Plaintiff "does not argue that [Defendant] [is] not entitled to a jury trial." *TS Emp.*, 2021 WL 5087928, at *3. Where, as here, "the case is ready to proceed to trial," Defendant's "right to a jury trial, combined with a finding that the claim cannot be finally adjudicated by a bankruptcy court, may *require* the Court to withdraw the reference." *In re: FKF 3, LLC*, No. 13 Civ. 3601 (KMK), 2016 WL 4540842, at *14 (S.D.N.Y. Aug. 30, 2016) (collecting cases). "The more imminent and likely a trial is, the more heavily this factor is weighed." *Id.*; *see, e.g.*, *Lyondell Chem.*, 467 B.R. at 725 ("If and when the defendants assert their jury trial rights and/or the case proceeds to trial, then, the defendants are free to move for withdrawal a second time."); *In re Magnesium Corp. of Am.*, No. 04 Civ. 1357 (PKC), 2004 WL 1161172, at *2 (S.D.N.Y. May 24, 2004) ("[O]ften courts in this

District have found it appropriate to defer withdrawing the reference until the case is trial ready."). This factor strongly favors withdrawing the reference.

Third, "the remaining *Orion* factors, including . . . 'considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law,' favor withdrawal." *Celsius Network*, 670 B.R. at 393 (quoting *Orion*, 4 F.3d at 1101). When the motion to withdraw the reference was filed, Plaintiff argued that Defendant had "fail[ed] to offer sufficient reason to believe that the District Court, which [wa]s unfamiliar with the history, facts, and stakeholders of a complex and lengthy bankruptcy proceeding, would be able to administer this proceeding more efficiently." Opp. at 16-17. Plaintiff also anticipated that the "matter that c[ould] be decided by the Bankruptcy Court through dispositive motions aimed at the purely legal question of whether the 'release' [wa]s ineffective to block Defendant's otherwise clear liability." *Id.* at 15. But the Bankruptcy Court has denied Plaintiff's motion for summary judgment, and Plaintiff does not expect further proceedings before it. Tr. at 4. In view of the current posture, the remaining *Orion* factors "weigh in favor of withdrawing the bankruptcy reference." *Celsius Network*, 670 B.R. at 395.

### III.    MOTION TO COMPEL ARBITRATION

#### A.  Legal Standards

"The Federal Arbitration Act ("FAA") reflects 'both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 114 (2d Cir. 2025) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "To determine whether parties agreed to arbitrate, courts apply a 'standard similar to that applicable for a motion for summary judgment,' that is, courts must 'consider all relevant, admissible evidence submitted by the parties' and must 'draw all reasonable inferences in favor of the non-moving party.'" *Id.* at 115 (quoting *Nicosia v.*

*Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). "In doing so, the court applies 'ordinary state-law principles that govern the formation of contracts'—here, the state-law principles of New York."[6] *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). However, "[b]efore [courts] address whether the putative agreement[] require[s] arbitration of the disputes at issue, [they] first need to inquire whether an agreement to arbitrate between the parties exists, and whether questions of arbitrability are for the court or the arbitrator to decide." *Id.* (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148-149 (2024)) (internal quotation marks omitted).

With respect to whether an agreement to arbitrate exists, "[t]he party seeking arbitration bears the initial burden of demonstrating that an agreement to arbitrate exists." *Id.* (citing *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022)). Importantly, "[t]he moving party need not show initially that the agreement would be *enforceable,* merely that one existed." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (emphasis in original) (internal quotation marks omitted).

Regarding whether questions of arbitrability are for the court or the arbitrator, "[t]he Supreme Court has instructed us that '[c]ourts should not assume that the parties agreed to arbitrate arbitrability.'" *Davitashvili*, 131 F.4th at 117 (quoting *First Options of Chi., Inc. v.*

---

[6] The 2015 Agreement does not specify the law that governs it, stating only that "[t]he parties have accepted these terms as a binding agreement and in a manner most effective according to the laws of the Holy Torah and the laws of the land." 2015 Agreement. Further, "neither party has briefed or argued the issue." *Tehran-Berkeley Civ. & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989). "The parties' briefs, however, rely on New York law. Under the principle that implied consent to use a forum's law is sufficient to establish choice of law, . . . [the Court] will apply New York law to this case." *Id.* (citing *Larsen v. A.C. Carpenter, Inc.,* 620 F. Supp. 1084, 1103 (E.D.N.Y.1985), *affirmed,* 800 F.2d 1128 (2d Cir.1986) (mem.)); *see also In re All Year Holdings Ltd.*, No. 21-12051 (MG), 2025 WL 559695, at *14 (Bankr. S.D.N.Y. Feb. 19, 2025) (employing the "center of gravity" test in concluding that New York law applies to the breach of contract claim in the adversary proceeding associated with this action).

*Kaplan*, 514 U.S. 938, 944 (1995). This is because "[t]he FAA provides that the issue of arbitrability should presumptively be resolved by the courts." *Id.* (citing *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014)). Still, "the presumption that a court should decide a question of arbitrability is overcome when there exists 'clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by [an] arbitrator.'" *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198–99 (2d Cir. 1996)).

"In *PaineWebber Inc. v. Bybyk*, [the Second Circuit] held that even absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'" *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (quoting *PaineWebber*, 81 F.3d at 1199–1200); *accord Valentino S.p.A. v. Mrinalini Inc.*, No. 24-810, 2025 WL 341867, *2 (2d Cir. Jan. 30, 2025)*; Wells Fargo*, 884 F.3d at 396; *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 898 (2d Cir. 2015). "Citing approvingly to *PaineWebber*, the New York Court of Appeals reached the same conclusion in *Smith Barney Shearson Inc. v. Sacharow*, holding that language providing for '[a]ny controversy' between the parties to be 'settled by arbitration' was sufficiently 'plain and sweeping' to indicate an intent to have arbitrability decided by the arbitrators." *Shaw Grp.*, 322 F.3d at 121 (quoting *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 43, 46 (1997)).

## B. Discussion

As "[t]he party seeking arbitration," Defendant "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). Defendant "produced an arbitration agreement that appears to bear [Goldman's] . . .

signature [acting on behalf of Debtor], and thereby cleared this bar." *Id.; see Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378 (S.D.N.Y. 1998) (deeming initial burden satisfied "by producing a copy of [a] customer agreement which includes an arbitration clause and which was purportedly signed by [a third party] on behalf of [the party resisting arbitration]"); 2015 Agreement at 229, 236 (stating that it is "agreed to by the undersigned parties, namely: Mr. Yoel Goldman, on his own behalf and on behalf of the compan[y] All Year Holdings," and showing Mr. Goldman's signature). Because Defendant has made a "*prima facie* showing" that the Arbitration Agreement exists, "the burden shifts to Plaintiff to show that: (i) it did not consent to arbitration, (ii) the arbitration agreement is invalid or unenforceable, or (iii) the arbitration agreement does not encompass its claims." *Aminoff & Co. LLC v. Parcel Pro, Inc.*, No. 21 Civ. (AT) (KHP), 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022). Here, the questions presented are (1) whether Plaintiff consented to the Arbitration Agreement; (2) whether Plaintiff's claims are within the scope of the Arbitration Agreement; and (3) whether Defendant waived his right to arbitration. As discussed below, only the first issue is for this Court to decide. The second and third issues are delegated to the arbitrator by the Arbitration Agreement.

> **i.    The Debtor Consented to the Arbitration Agreement, Binding Plaintiff Insofar as Plaintiff Acts on Behalf of the Debtor.**

Plaintiff argues that the Arbitration Agreement does not bind it for two reasons. First, Plaintiff contends that "Defendant's deposition testimony significantly calls into question whether Plaintiff, as successor-in-interest to the Debtor, is the party bound by the 2015 Agreement." Opp. at 20. During his deposition, Defendant testified that, "for me, all of [Goldman's] entities, everything was one person": Goldman, the sole shareholder and manager of the Debtor. Silberstein Dep. at 13. Plaintiff urges that this testimony, "at a minimum, creates factual questions and strongly suggests that the 2015 Agreement was only ever meant to be

between Goldman and Defendant personally," even though Goldman "purports to have signed on behalf of himself and various entities," including the Debtor. *Id.* at 20. Second, Plaintiff asserts that, "even if other corporate entities were implicated in this arbitration agreement, none of them would have been the Debtor, which was not even in existence when the two men started working on these various real estate development projects" that gave rise to the 2015 Agreement. *Id.* at 21.

Plaintiff's contentions do not create a factual dispute. Under New York law, "where the terms of an agreement are clear and unambiguous, the Court will not look beyond the 'four corners' of the agreement, and parol[e] evidence of the parties' intentions is inadmissible." *Jones v. Mercedes-Benz, Manhattan, Inc.*, No. 19 Civ. 00472 (ALC), 2020 WL 1445728, at *5 (S.D.N.Y. Mar. 25, 2020) (citation omitted). The Debtor—through its agent, Goldman— "unambiguous[ly]" signed the 2015 Agreement. *Id.*; *see* 2015 Agreement at 229. Therefore, parole evidence from Defendant's deposition "is not admissible to create an ambiguity." *Blackboard Inc. v. Int'l Bus. Machines Corp.*, No. 21 Civ. 7165 (LGS), 2022 WL 1807536, at *5 (S.D.N.Y. June 2, 2022) (citing *Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022)).

In addition, although the Debtor did not exist when Defendant and Goldman began working on the projects identified in the 2015 Agreement, by the time the parties entered into that agreement, the Debtor indirectly owned 100% of the entities that held the properties. ECF No. 9-1 (Aloe Reply Decl.), Ex. Q. The Debtor therefore received, as consideration for the 2015 Agreement, the benefit of Defendant's work on behalf of its subsidiaries, as well as Defendant's agreement to accept payment from the subsidiaries under the identified terms. *See Greenberg v. Greenberg*, 646 F. App'x 31, 32 (2d Cir. 2016) ("The law is well settled that in order for a promise to be enforceable as a contract, the promise must be supported by valid consideration."). Accordingly, the Debtor is subject to the Arbitration Agreement.

14

That leaves the question of whether Plaintiff is also subject to the Arbitration Agreement. When an arbitration agreement is at issue in an adversary proceeding involving multiple claims, "[t]he Court must determine the arbitrability of the Claims for Relief on a claim-by-claim basis. An important aspect of the analysis is consideration of whether the claims that the Trustee is asserting belong to the Debtor or to [the] estate's creditors." *In re Try The World, Inc*, No. 18-11764-JLG, 2021 WL 3502607, at *7 (Bankr. S.D.N.Y. Aug. 9, 2021). This is because, "[w]hen the trustee sues as statutory successor to the debtor, his rights are limited to the same extent as the debtor's under applicable non-bankruptcy law. If the debtor agreed in a pre-petition contract to arbitrate a dispute, the trustee, suing as successor to the debtor, is likewise bound by the arbitration clause." *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 206 (Bankr. S.D.N.Y. 2002) (citing *Hays & Co. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989)); *Pardo v. Pacificare of Texas, Inc. (In re APF Co.)*, 264 B.R. 344, 363 (Bankr. D. Del. 2001)). "In contrast, if a trustee is asserting claims that belong to the creditors—like fraudulent transfer claims under section 548 of the Bankruptcy Code—the trustee is not bound by an arbitration clause, and cannot be compelled to arbitrate those claims." *In re Try The World, Inc.*, 2021 WL 3502607, at *7 (citing *In re Bethlehem Steel Corp.*, 390 B.R. 784, 791 (Bankr. S.D.N.Y. 2008)).

Plaintiff's Amended Complaint asserts five claims. Count I is for breach of the Note. Am. Complaint ¶¶ 18–22. This claim is brought by Plaintiff as successor-in-interest to the Debtor, and therefore Plaintiff is subject to the Arbitration Clause with respect to that claim. Counts II to V allege several forms of fraudulent transfer under 11 U.S.C. § 548 and § 273 of the New York Debtor and Creditor Law. *Id.* ¶¶ 23–88. "In this Circuit, courts have exempted fraudulent transfer claims from arbitration because they are statutory claims belonging to the trustee and are not claims derivative of the debtor's own rights." *Bethlehem Steel*, 390 B.R. at

790 (citing *Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir.1977)); *Hagerstown*, 277 B.R. at 181.

Accordingly, Plaintiff is not subject to the Arbitration Agreement with respect to Counts II to V.

> ii.   **Whether Count I Is Within the Scope of the Arbitration Agreement Is a
> Matter Delegated to the Arbitrator.**

Plaintiff contends that this dispute "does not fall within the arbitration agreement's

limited scope." Opp. at 18. For his part, Defendant argues that the Arbitration Agreement is

"classically broad," and that "because the language of section 18 of the [2015] [A]greement

delegates the question of arbitrability to the arbitrators, this Court should not even reach the

question of whether [P]laintiff's claims fall within the broad scope of the parties' arbitration

agreement and must compel arbitration of the dispute over arbitrability without addressing the

merits of either arbitrability of the controversy or of the underlying claims." ECF No. 22 at 4-5

(footnote omitted) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68

(2019)).

On the "gateway question of arbitrability," *Davitashvili*, 131 F.4th at 117 (internal

quotation marks omitted), "there exists clear and unmistakable evidence from the arbitration

agreement, as construed by the relevant state law, that the parties intended that the question of

arbitrability sh[ould] be decided by [an] arbitrator." *Wells Fargo*, 884 F.3d at 395 (internal

quotation marks omitted). As previously noted, the Arbitration Agreement states:

> For *any question or doubt or dispute* that shall arise between the parties, *in all
> that concerns this agreement*, or concerning any of the four properties mentioned
> above, both regarding fulfilling the essence of the agreement as well as regarding
> the payment of interest, as describe [*sic*] above, and also concerning the sale of
> the properties or any portion of them prior to renting out the apartments, or any
> other matter that both parties agree to being derived from the above properties, the
> parties shall turn to the mediator Rabbi Avraham Shlomo Ausch, or Rabbi Chaim
> Mordechai Shtesel, who are acceptable to both and who may facilitate a
> compromise between them; and if they are unable to agree on which of them to
> turn to, or if they shall be otherwise unable to turn to them, they shall adjudicate

the matter before the rabbinical court (*beis din*) of the Hisachdus Harabonim; and the signing of this agreement shall in full effect be equal to signing an arbitration agreement before the rabbinical court of the Hisachdus Harabonim mentioned above, and according to what is customary to sign at present before those rabbinical courts that allow for it to be full in effect according to the laws of arbitration.

2015 Agreement (emphasis added).  The parties agreed to arbitrate "*any* question or doubt or dispute that shall arise between the parties, in *all* that concerns this agreement."  2015 Agreement (emphasis added).  "[E]ven absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of *any* and *all* controversies reflects such a broad grant of power to the arbitrators as to evidence the parties' clear inten[t] to arbitrate issues of arbitrability."  *Shaw Grp.*, 322 F.3d at 121 (emphasis added) (internal quotation marks omitted); *accord Smith Barney*, 91 N.Y.2d at 43, 46.  Thus, the Court "conclude[s] that the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability."  *Id.* at 125.

Moreover, Plaintiff's view that the Arbitration Agreement narrowly "appl[ies] to a closed universe of disputes concerning the real estate development projects they were at the time actively engaged in," Opp. at 18, "would render part of the contractual provision mere surplusage," *Prospect Cap. Corp. v. Credito Real USA Fin. LLC*, 702 F. Supp. 3d 178, 186 (S.D.N.Y. 2023).  The Arbitration Agreement covers *"any* question or doubt or dispute . . . in all that concerns this agreement, *or* concerning any of the four properties."  2015 Agreement (emphasis added). "Plaintiff's interpretation reads the phrase 'in all that concerns this agreement,' *id.*, "out of the contract."  *Prospect Cap.*, 702 F. Supp. 3d at 186.  "The Court will not adopt an interpretation that renders a provision surplusage."  *Id.* (citing *FCI Grp., Inc. v. City of New York*, 862 N.Y.S.2d 352, 356 (1st Dep't 2008) ("render[ing] [a] . . . provision mere

surplusage [is] in contravention of the settled rule that a contract is to be construed so as to give effect to each and every part").

### iii.    The Issue of Waiver Is Delegated to the Arbitrator.

"'[O]rdinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator.'"  *Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002) (quoting *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82-83 (2d Cir. 1998)).  "However, to prevent forum shopping 'the district court [can] properly decide the question when the party seeking arbitration ha[s] already participated in litigation on the dispute.'"  *Id.*; *accord Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81 (2d Cir. 2017); *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 612-617 (S.D.N.Y. 2020); *Winter Invs., LLC v. Panzer*, No. 14 Civ. 6852 (KPF), 2015 WL 5052563, *9 n.6 (S.D.N.Y. Aug. 27, 2015).

In arguing for waiver, Plaintiff does not maintain that Defendant engaged in litigation. *See Bell*, 293 F.3d at 569.  Instead, Plaintiff relies on delay and potential prejudice.  *See* Opp. at 21-23 (arguing that Defendant "waited months to bring this motion," that this "mitigates in favor of waiver," and that "Plaintiff will be prejudiced by arbitration . . . at this point in the litigation"). Nor does the record show that Defendant "participated in litigation."  *Bell*, 293 F.3d at 569. Prior to moving to compel arbitration, Defendant "made no motions . . . sought no discovery, and did nothing else that could be characterized as 'litigating'" Plaintiff's claims.  *Desarrolladora La Ribera v. Anderson*, No. 24 Civ. 67 (LAK), 2024 WL 5186600, at *16 (S.D.N.Y. Dec. 20, 2024). "Any additional motion practice or discovery that occurred after [Defendant moved to compel arbitration], moreover, largely reflected the Court's schedule in" reviewing Defendant's motion. *Lawrence v. NYC Medical Practice, P.C.*, No. 18 Civ. 8649 (GHW), 2023 WL 4706126, at *16 (S.D.N.Y. July 21, 2023).  Accordingly, the Court concludes that the issue of waiver is properly left to the arbitrator.  *See Bell*, 293 F.3d at 569-570.

18

### iv.    The Court Stays All Claims Pending the Arbitration of Count I.

"[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). But where, as here, both arbitrable and non-arbitrable claims have been asserted, the "[n]on-arbitrable claims are not subject to the mandatory stay required by section 3 of the FAA." *In re Try The World*, 2021 WL 3502607, at *14 (citing *In re Hagerstown*, 277 B.R. at 199 n.18). Instead, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987).

"A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Winter Invs., LLC v. Panzer*, No. 14 Civ. 6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015). In such a case, the arbitration is "likely to have preclusive effect over some or all of the claims not subject to arbitration." *Id.* Granting a stay therefore "minimize[es] inconsistent results and conserv[es] judicial resources." *Midland Walwyn Cap. Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236 (LLM), 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992). Here, the arbitrable and non-arbitrable claims all concern the Note. *See* Am. Complaint at 6-15 (discussing the Note as a central feature of all five claims). Further, resolution of all of these claims likely will require determining the applicability of the 2015 Agreement, the 2020 Agreement, and the Release. Given the "significant factual overlap between the remaining claims and the arbitrated claims," *Winter*, 2015 WL 5052563 at *11, the Court stays all claims pending the arbitration of Count I.

## IV.     CONCLUSION

For the reasons stated above, Defendant's motion to withdraw the bankruptcy reference is GRANTED as to all counts of Plaintiff's Amended Complaint.  Defendant's motion to compel arbitration is GRANTED as to Count I and DENIED as to Counts II through V.

The case is STAYED pending the outcome of arbitration of Count I.  Within 14 days of the conclusion of the arbitration proceedings, the parties shall file a joint status letter updating the Court.

The Clerk of Court is directed to terminate ECF No. 1 and to stay the case pending the conclusion of arbitration.

SO ORDERED.

Dated: October 17, 2025
        New York, New York

_____
JENNIFER H. REARDEN
United States District Judge